UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
GREGORY BLEA and
ISABEL BLEA,
    Debtor(s)    No. 19-10520-t7

## MOTION TO APPROVE TRUSTEE'S SALE OF REAL PROPERTY TO MELISSA JONES

**COMES NOW** the Trustee, by and through counsel, Philip J. Montoya, pursuant to the authority granted to said Trustee, and moves for an Order approving the sale of property of the estate and further states:

1. The Debtors filed their Chapter 7 petition on March 11, 2019.

2. The trustee is the duly appointed and acting trustee of the aforementioned estate.

3. At the time the Debtors filed this bankruptcy, they were the owners of land and improvements located in, Albuquerque, New Mexico and described as:

> Lot numbered Twenty-five (25) of Block numbered One (1), Unit 12, Jade Park Mobile Home Subdivision, according to the plat filed November 9, 1971, in Plat Book C8, Page 59, in the Office of the County Clerk of Bernalillo County, New Mexico, EXCEPTING the westerly one (1) foot of the above described lot which was deed to the City of Albuquerque, New Mexico.

This property is more commonly known as 7401 Frank Place NE, Albuquerque, New Mexico 87109 and will be referred to as the subject property.

4. No exemption has been claimed in the subject property.

5. An offer to purchase the subject property for $98,000.00 cash was made by Melissa Jones. Trustee accepted that offer and seeks Court approval herein. A copy of

the executed purchase agreement is attached as Exhibit A (hereinafter referred to as the purchase agreement).

6. The purchase agreement, when entering into, was contingent upon short sale approval by the first position lender. Nationstar Mortgage LLC approved the short sale on August 9, 2019.

7. The purchase agreement provides that seller is to pay for an owner's title policy, survey, certain miscellaneous closing fees, and all taxes, assessments, and other accrual charges pertaining to the subject property, prorated to date of closing of sale. It is estimated that these closing costs will be no more than $2,500.00.

8. Trustee's realtor Amy Ackroyd of TAL Realty, Inc., working in conjunction with trustee's consultant BK Global, will together be entitled to a realtor's commission in the amount of $5,880.00 (6.00% of the sales price), plus applicable gross receipts tax. This commission may be split with buyer's realtor, if applicable.

9. The subject property is encumbered by a first position mortgage in favor of Nationstar Mortgage LLC securing a note with a balance due of approximately $84,000.00. BK Global has negotiated with Nationstar Mortgage LLC for a release of mortgage for a minimum payoff of no less than $82,079.30.

10. The subject property is encumbered by a water lien in favor of the City of Albuquerque in the amount of $418.07. In the event that this lien is paid prior to closing by BK Global, it will be entitled to reimbursement.

11. Trustee seeks herein approval of the sale of the subject to property to Melissa Jones for the cash price of $98,000.00.

12. Trustee estimates that the net proceeds from the sale of the real property will be in the approximate amount of $7,500.00.

13. Trustee believes the proposed sale to be reasonable and in the best interests of the estate and recommends that the sale be approved.

**WHEREFORE**, the Trustee requests that the Court enter an Order approving the aforementioned sale and conditions.

Respectfully submitted:

Filed electronically
Philip J. Montoya
Counsel for Trustee
1122 Central Ave. SW, Ste 3
Albuquerque, NM 87102
(505) 244-1152 (505) 717-1494 fax
pmontoya@swcp.com

I hereby certify that on August 22, 2019
I caused the foregoing pleading to be sent
by operation of the Court's electronic
filing system to all parties indicated on the
electronic filing receipt and to Gregory Blea
and Isabel Blea, by first class mail, to
8214 Krim Drive NE, Albuquerque, NM 87109.

s/Filed electronically
Philip J. Montoya

DocuSign Envelope ID: 989CA8D6-FF69-4834-A41E-F75D8B6426DA

Exhibit A

 

# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019
## PART I – BROKER DUTIES DISCLOSURE

Per New Mexico law, Brokers are required to perform a specific set of applicable Broker Duties. Prior to the time the Broker generates or presents any written documents that has the potential to become an express written agreement, he/she must disclose such duties and obtain written acknowledgement that the Broker has made such disclosures.

**All Brokers in this transaction owe the following broker duties to *ALL* BUYERS AND SELLERS in this transaction, even if the broker is not representing the buyer or the seller in the transaction:**

1. Honesty and reasonable care and ethical and professional conduct;
2. Compliance with local, state, and federal fair housing and anti-discrimination laws, the New Mexico Real Estate License Law and the Real Estate Commission rules and other applicable local, state, and federal laws and regulations;
3. Performance of any and all written agreements made with the prospective buyer, seller, landlord (owner) or tenant;
4. Written disclosure of potential conflict of interest or any other written agreement that the broker has in the transaction, including, but not limited to:
   A. any written brokerage relationship the Broker has with any other parties to the transaction or;
   B. any material interest/relationship of a business, personal or family nature that the broker has in the transaction; or
   C. any written agreement the Broker has with a licensed Transaction Coordinator who will be providing services related to the transaction.
5. Written disclosure of any adverse material facts actually known by the broker about the property or the transaction, or about the financial ability of the parties to the transaction to complete the transaction; adverse material facts requiring disclosure do not include any information covered by federal fair housing laws or the New Mexico Human Rights Act.

**In addition to the above duties, Broker(s) owes the following Broker Duties TO THE BUYER(S) AND/OR SELLER(S) IN THIS TRANSACTION TO WHOM THE BROKER(S) IS/ARE DIRECTLY PROVIDING REAL ESTATE SERVICES, regardless of the scope and nature of those services.**

1. Unless otherwise agreed to in writing by the party, assistance to the party in completing the transaction including:
   A. timely presentation of and response to all written offers or counter-offers; and
   B. active participation in assisting in complying with the terms and conditions of the contract and with the finalization of the transaction;
2. Acknowledgement by the broker that there may be matters related to the transaction that are outside the broker's knowledge or expertise and that the broker will suggest that the party seek expert advice on these matters;
3. Advise to consult with an attorney regarding the effectiveness, validity or consequences of any written document generated by the brokerage or presented to the party and that has the potential to become an express written agreement;
4. Prompt accounting for all money or property received by the broker;
5. Maintenance of any confidential information learned in the course of any prior agency relationship unless the disclosure is with the former principal's written consent or is required by law;
6. Written disclosure of brokerage relationship options available in New Mexico;
   A. **Exclusive agency**; an express written agreement between a person and a brokerage wherein the brokerage agrees to exclusively represent as an agent the interest of the person in a real estate transaction.
   B. **Dual agency**; an express written agreement that modifies existing exclusive agency agreements to provide that the brokerage agrees to act as facilitator in a real estate transaction rather than as an exclusive agent for either party.
   C. **Transaction Broker**; The non-fiduciary relationship created by law, wherein a brokerage provides real estate services without entering into an agency relationship.
7. Unless otherwise authorized in writing, a broker who is directly providing real estate services to a seller shall not disclose the following to the buyer in a transaction:
   A. that the seller has previously indicated he/she will accept a sales price less than the asking or listed price;
   B. that the seller will agree to financing terms other than those offered;
   C. the seller motivations for selling/leasing; or
   D. any other information the seller has requested in writing remain confidential, unless disclosure is required by law;
8. Unless otherwise authorized in writing, a broker who is directly providing real estate service to a buyer shall not disclose the following to the seller in the transaction:
   A. that the buyer has previously indicated he/she will pay a price greater than the price submitted in a written offer;
   B. the buyer's motivation for buying; or
   C. any other information the buyer has requested in writing remain confidential, unless disclosure is required by law.

**BUYER(S) AND SELLER(S): PLEASE ACKNOWLEDGE RECEIPT BY INITIALING BELOW.**




# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019
### PART II – OTHER REQUIRED DISCLOSURES
*Broker shall update these and all other required disclosures as needed.*

1. _____Kelly Fajardo_____ ("Buyer's Broker") is working with the Buyer in this transaction as a:
   - [X] Transaction Broker without a written agreement.
   - [ ] Transaction Broker with a written agreement (NMAR Form 1206, Buyer Broker Agreement).
   - [ ] Agent with a written agreement (NMAR Form 1206, Buyer Broker Agreement with Agency Addendum).
2. _____Amy Ackroyd_____ ("Seller's Broker") is working with the Seller in this transaction as a:
   - [X] Transaction Broker with a written Listing Agreement.
   - [ ] Agent with a written Listing Agreement with Agency Addendum.
   - [ ] Transaction Broker without a Listing Agreement, but with a Compensation Agreement.
3. [ ] **IN-HOUSE TRANSACTION: Buyer and Seller's Consent to Dual Representation, NO Dual Agency created.**
   - [ ] A. Buyer's Broker is licensed under the same Qualifying Broker in the same Brokerage as Seller's Broker. Seller's Broker has a written listing agreement with the Seller as [ ] Transaction Broker [ ] Agent.
   - [ ] B. Buyer's Broker is also Seller's Broker for the property in this Transaction. Seller's Broker has a written listing agreement with Seller as [ ] Transaction Broker [ ] Agent.
   - [ ] C. Brokerage is representing both Buyer and Seller.
4. [ ] **DUAL AGENCY:** Brokerage is representing both Buyer and Seller by means of written agency agreements with each of them and Designated Brokerage has not been chosen by the Qualifying Broker; Designated agency is a policy that discloses to a client of the brokerage that the broker representing them as an agent by means of an express written agency agreement is their only representative in the brokerage. When Designated Agency is *NOT* chosen, Dual Agency is created. In the case of Dual Agency, prior to writing or presenting this offer, Broker must obtain written consent from the Buyer and Seller (NMAR Form 1301, Agency Agreement - Dual).
5. **ADDITIONAL DISCLOSURES:** If any of the following apply, indicate below and attach Broker Duties Supplemental Disclosure NMAR Form 2100 or other disclosure document.
   - A. [X] Broker(s) has any **CONFLICT OF INTEREST** (including any material interest or relationship of a business, personal, or family nature in the transaction);
   - B. [ ] Broker(s) knows of **ADVERSE MATERIAL FACTS** about the Property or Transaction; or
   - C. [ ] Broker(s) has a written agreement with a licensed **TRANSACTION COORDINATOR** who will be providing services related to the transaction.

By their signatures below, the parties acknowledge the receipt of **BROKER DUTIES** and **BROKER DISCLOSURES**:

**BUYER**

Buyer Signature: Melissa Jones          Date          Time
Seller Signature: Philip Montoya, Trustee     Date 6/17/19    Time 11:30 am

Buyer Signature          Date          Time
Seller Signature          Date          Time

Check if Applicable:
- [ ] Buyer is a New Mexico Real Estate Broker
- [ ] Buyer is a party to another Buyers Broker Agreement

Check if Applicable:
- [ ] Seller is a New Mexico Real Estate Broker

### BUYER'S BROKER

TAL Realty, Inc.
Buyer's Brokerage Firm

Broker [X] is [ ] is not a REALTOR®

Broker Signature Kelly Fajardo          Date 06/10/2019    Time

### SELLER'S BROKER

TAL Realty
Seller's Brokerage Firm

Broker [X] is [ ] is not a REALTOR®

Broker Signature Amy Ackroyd          Date 06/10/2019    Time

NMAR Form 2104 (2019 JAN) Cover Page II    ©2008 New Mexico Association of REALTORS®

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    Frank

 

# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

**OFFER DATE:** June 10, 2019

## 1. PARTIES AND AGREEMENT.

Melissa Jones ("Buyer") agrees to buy from Seller and **Philip Montoya, Trustee** ("Seller") agrees to sell and convey to Buyer, in accordance with terms of this Purchase Agreement ("Agreement"), the Property described in Para. 5 with a Settlement/Signing Date on ON OR BEFORE __21 DAYS__ DAYS FROM THE BK COURT APPROVAL is further described in Para. 9A below).

## 2. PURCHASE PRICE. $ 98,000.00

A. APPROXIMATE CASH DOWN PAYMENT [X] to be determined by lender and/or buyer OR $ _____

B. AMOUNT OF THE LOAN(S) [X] to be determined by lender and/or buyer OR $ _____

## 3. OFF MARKET/TIME OFF MARKET (TOM) FEE.

A. Unless otherwise agreed to in writing, as of Date of Acceptance, Seller shall take the Property "Off the Market", which means Seller shall not accept any other offer to sell the Property, **except a Back-Up Offer**.

B. This Sub-Para. 3(B) to be used **ONLY IF Buyer will be compensating Seller for taking the Property Off the Market** in order to allow Buyer the opportunity to review Seller's Property Disclosure per Para. 18(H) and conduct inspections per Para. 21 (Collectively, "TOM Fee Inspections"), and if applicable, to resolve any objections Buyer may have to the TOM Fee Inspections. As compensation, Buyer shall deliver to Seller $ _____ ("TOM Fee"), in the form of ☐ Check ☐ Cash ☐ Other _____, no later than _____ days from Date of Acceptance. In the event of Closing, the TOM Fee, **SHALL NOT** be refunded to Buyer or applied to Purchase Price, down payment, and/or closing costs. In the event Buyer terminates this Agreement for any reason, Seller shall retain the entirety of the TOM Fee. Buyer's failure to timely deliver the TOM Fee shall be considered a default of this Agreement. See NMAR Form 2104(A) TOM Fee Information Sheet and 2104(B) Receipt for TOM Fee.

## 4. EARNEST MONEY.
Buyer shall deliver $1,000.00 _____ Earnest Money in the form of [X] Check ☐ Cash ☐ Note ☐ Wire Transfer of Funds ☐ Other to _____, no later than __5__ days from [X] Date of Acceptance OR ☐ if Buyer has no objections to TOM Fee Inspections, the Objection Deadline in Para. 21(F)(iii) or if Buyer has objections to TOM Fee Inspections, the date the parties reach Resolution to those objections OR ☐ OTHER _____. Earnest Money shall be applied to Purchase Price, down payment, and/or closing costs upon Funding Date. Buyer's failure to timely deliver Earnest Money shall be considered a default of this Agreement.

## 5. PROPERTY.
### A. DESCRIPTION.

| 7401 Frank Place NE | Albuquerque | NM | 87109 |
|---|---|---|---|
| Address | City | | State/Zip |

**Legal Description:** 25 1 Jade Park Mobile Home Subd. Unit 12

or see metes and bounds or other legal description attached as Exhibit _____, __Bernalillo__ County(ies), New Mexico.

Gross Receipts Tax (GRT) Location Code: _____ (To be completed by Broker).

If the legal description of the Property is incomplete or inaccurate, this Agreement shall not be invalid; the legal description shall be completed or corrected to meet the requirements of the Title Company issuing the title policy.

B. **TYPE:** ☐ Site built [X] Manufactured housing ☐ Modular ☐ Off-site built ☐ Other: _____. (See NMAR Form 2305 – Information Sheet-Manufactured Housing)

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR Forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity, or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

DocuSign Envelope ID: 989CA8D6-FF69-4834-A41E-F75D8B6426DA




# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

C. **OTHER RIGHTS.** Unless otherwise provided herein, Seller shall convey to Buyer all existing wind, solar, water and mineral rights ("Other Rights") appurtenant to the Property. Seller makes no warranties as to the existence of any of the foregoing Other Rights. NOTE TO SELLER: If Seller is retaining any or all of the foregoing Other Rights, Seller should NOT sign this offer; a counteroffer would be necessary. NOTE TO BUYER: Buyer should be aware that some or all of the foregoing Other Rights may have been previously severed from the Property and may be owned by third persons; those severed rights would not convey to Buyer by way of this Agreement. Buyer **SHOULD** seek legal and expert assistance to determine what rights, **IF ANY**, Buyer is acquiring with the Property, to understand how the non-conveyance of any rights or portions thereof may affect Buyer; and to ensure that all rights that will convey with the Property are properly transferred at closing.

D. **FIXTURES, APPLIANCES AND PERSONAL PROPERTY.**
   i. **FIXTURES.** The Property shall include all Fixtures, free of all liens, unless otherwise noted, including, but not limited to, the following Fixtures if such Fixture exists on the Property, unless otherwise excluded as stated in Para. 5E:

   - Attached fireplace grate(s) & screen(s)
   - Attached floor covering(s)
   - Attached mirror(s)
   - Attached outdoor lighting & fountain(s)
   - Attached pot rack(s)
   - Attached window covering(s) & rod(s)
   - Awning(s)
   - Built in/attached speaker(s) & subwoofer(s)
   - Built-in Murphy bed(s)
   - Ceiling fan(s)
   - Central vacuum, to include all hoses & attachments
   - Dishwasher(s)
   - Fire Alarm(s) (if owned by Seller)
   - Garbage disposal(s)
   - Garage door opener(s)
   - Heating system(s)
   - Landscaping
   - Light fixture(s)
   - Mailbox(es)
   - Outdoor plant(s) & tree(s) (other than those in moveable containers)
   - Oven(s)
   - Pellet, wood-burning or gas stove(s)
   - Range(s)
   - Window/door screen(s)
   - Security System(s) (if owned by Seller)
   - Smoke Alarm(s) (if owned by Seller)
   - Solar Power System(s)/Panels (If leased by Seller, lien may exist)
   - Sprinkler(s)/irrigation equipment
   - Storm window(s) & door(s)
   - TV antenna(s) & satellite dish(es)
   - Ventilating & air conditioning system(s)
   - Water conditioning/filtration /water softener/purification system(s) (if owned by Seller)

   ii. **PERSONAL PROPERTY.** The following existing personal property, if checked, shall remain with the Property:

   - ☐ All window covering(s)
   - ☐ Audio component(s)
   - ☐ Decorative mirror(s) above bath vanities
   - ☐ Dryer(s)
   - ☐ Washer(s)
   - ☐ Garage door remote(s)
   - ☐ Freezer(s)
   - ☐ Freestanding Range(s)
   - ☐ Microwave(s)
   - ☐ Pool & spa equipment including any mechanical or other cleaning system(s)
   - ☐ Refrigerator(s)
   - ☐ Satellite receiver(s) with access cards (if owned by Seller and if transferable)
   - ☐ Storage Shed(s)
   - ☐ TV(s)
   - ☐ Unattached fireplace grate(s) & screen(s)
   - ☐ Unattached outdoor fountain(s) & equipment
   - ☐ Unattached outdoor lighting
   - ☐ Hot Tub(s)

   Other: _____

   Personal Property remaining with the Property as stated in Para. 5D, shall be the actual personal property that is present as of the date the Buyer submits this offer, shall not be considered part of the premises and shall be transferred with no monetary value, free and clear of all liens and encumbrances.

E. **EXCLUSIONS.** The following items are excluded from the sale: **NONE**

NMAR Form 2104 (2019 JAN) Page 2 of 15 ©2008 New Mexico Association of REALTORS® Buyer_____ Seller **M**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Frank




# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

6. **FINANCED OR CASH PURCHASE**
   A. ☒ **LOANS.** This Agreement is contingent upon Buyer's ability to obtain a loan in the amount stated above in Para. 2(B) of the following type:
   ☒ Conventional ☐ FHA ☐ VA ☐ Other: _____
   i. Buyer ☐ has made written application for a loan, or ☒ shall make written application for a loan no later than __3__ days after the Date of Acceptance.
   ii. Buyer shall provide Seller with a Pre-Qualification Letter from a lender no later than __with__ days after the Date of Acceptance. Pre-Qualification Letter must stipulate that:
      a) A written loan application has been made;
      b) A credit report has been obtained and reviewed by a lender;
      c) A preliminary loan commitment has been secured from the same lender;
      d) Financing equal to the loan amount provided in Para. 2(B) of this Agreement is available to complete the transaction by the Settlement/Signing Date subject to contingencies provided for in this Agreement and underwriting approval.
   If Buyer does not obtain a Pre-Qualification Letter within the timeframe stipulated above, this Agreement shall terminate and the Earnest Money, if delivered, shall be refunded to Buyer.
   iii. If Buyer changes lender after delivery of the Pre-Qualification Letter referenced in Para. 6(A)(ii), Buyer shall have the obligation to notify Seller in writing and provide a new Pre-Qualification Letter to Seller within two (2) days of changing lender. This new Pre-Qualification Letter must include the same stipulations as the original Pre-Qualification Letter as set forth in Para. 6(A)(ii). If Buyer does not obtain and deliver a new Pre-Qualification Letter within two (2) days of changing lender, the Seller has the option to terminate this Agreement. If Seller elects to terminate this Agreement, the Earnest Money, if delivered, shall be refunded to Buyer.
   iv. Buyer shall cooperate and act in good faith in obtaining final approval for the loan as outlined in the Pre-Qualification Letter referenced in Para. 6(A)(ii). If after issuing the Pre-Qualification letter, lender makes changes to the loan conditions and/or the loan program that adversely affect Buyer's ability to obtain the loan, increase Seller's costs or delay closing, Buyer shall have the obligation to notify Seller in writing within two (2) days of such occurrence and to include a copy of the lender requirement(s) with the notification. In that event, within three (3) days of receipt of Buyer's notification, Seller shall notify Buyer in writing: (a) of Seller's approval of such changes; or (b) of Seller's decision to terminate the Agreement. If Seller terminates the Agreement per this Sub-Para. 6(A)(iv), Earnest Money, if delivered, shall be refunded to Buyer. If Seller fails to notify Buyer of Seller's position within three (3) days of receipt of Buyer's notification, Seller is deemed to have **rejected** such change in lender requirement(s). In this event, the Agreement shall terminate and the Earnest Money, if delivered, shall be refunded to Buyer.
   v. In the event the lender determines Buyer does not qualify for the loan, Buyer shall provide to Seller and Seller must receive a written rejection letter from the Buyer's lender prior to 11:59 p.m on the day before; or ☐ ____ days before Settlement/Signing Date. In the event Seller does not receive such rejection letter within the timeframe set forth in this Sub-Para. 6(A)(v), Buyer shall forfeit his Earnest Money, if delivered, to Seller. Days are calculated as calendar days; however, for purposes of this subsection only (Para. 6(A)(v)), there shall be NO extension of time when the deadline for Seller to receive the lender's written rejection letter falls on a weekend day or a legal holiday. The definition of "days" for all other provisions of this Agreement is as set forth in Para. 31.
   B. ☐ **SELLER FINANCING.** The approximate balance of $ _____ shall be financed by Seller and shall be secured by: ☐ Real Estate Contract ☐ Mortgage ☐ Deed of Trust ☐ Other: _____. Terms and conditions of the applicable instrument shall be attached as an addendum. For a Real Estate Contract, attach NMAR Form 2402 – Real Estate Contract Addendum to Purchase Agreement. For a Mortgage or Deed of Trust, Attach NMAR Form 2507 – Addendum to Purchase Agreement – Seller Financing, Mortgage or Deed of Trust.
   C. ☐ **CASH PURCHASE:** Buyer shall purchase the subject Property for Cash. No later than _____ days after the Date of Acceptance, Buyer shall provide Seller with verification of funds and proof satisfactory to Seller that Buyer has in Buyer's possession or control, the funds necessary to complete the transaction. This Agreement shall terminate in the event Buyer fails to provide timely proof of funds and Earnest Money, if delivered, ☐ shall ☐ shall not be refunded to Buyer.

DocuSign Envelope ID: DC71566F-E444-43CA-A832-AA44A428F2A8




# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

7. ☐ **BUYER'S SALE, CLOSING AND FUNDING CONTINGENCY:** This Agreement is contingent upon the Closing and Funding of buyer's property located at _____ on or before _____, _____, subject to any applicable Buyer's Contingency Addendum if attached as indicated below:
   A. ☐ Buyer represents that Buyer's property is currently under contract for sale. ☐ Check if NMAR Form 2503A, Buyer's Closing and Funding Addendum is attached; OR
   B. ☐ Buyer represents that Buyer's Property is NOT yet under contract for sale. ☐ Check if NMAR Form 2503, Buyer's Sale Contingency Addendum is attached.

8. **APPRAISAL.**
   A. ☐ **CASH OR SELLER-FINANCED.** Buyer ☐ does ☐ does not require an appraisal.
      **Buyer Initials** _____ _____ .
      If Buyer is requiring an appraisal, the following applies:
      i. Buyer shall select the appraiser;
      ii. ☐ Buyer ☐ Seller shall pay for the appraisal; and
   B. **APPRAISAL CONTINGENCY.** It is expressly agreed that notwithstanding any other provisions of this Agreement, the Buyer shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of Earnest Money deposits or otherwise if the Purchase Price is greater than the Appraisal. This Appraisal Contingency applies to the following:
      i. All conventional and FHA/VA loans requiring an appraisal; and
      ii. Cash and seller-financed purchases if the Buyer requires an appraisal as indicated in Para. 8(A).
   C. **OPTIONS AVAILABLE IN THE EVENT PURCHASE PRICE IS GREATER THAN APPRAISAL.**
      i. Buyer may proceed with this Agreement without regard to the amount of the appraised valuation provided Buyer delivers written notice to Seller of such election within three (3) days of receipt of said appraised valuation ("3-day Period"). If Buyer fails to notify Seller of his intent to proceed within the 3-day Period, this Agreement shall automatically terminate and Earnest Money, if delivered, shall be refunded to Buyer; OR
      ii. The parties may negotiate a new Purchase Price. If the parties cannot agree to a new Purchase Price within five (5) days of Seller's receipt of Buyer's notification of the Appraisal, this Agreement shall automatically terminate and Earnest Money, if delivered, shall be refunded to Buyer; OR
      iii. Buyer may terminate this Agreement. In this event, Earnest Money, if delivered, shall be refunded to Buyer.

9. **CLOSING.** "Closing" is defined as a series of events by which Buyer and Seller satisfy all of their obligations in the Agreement. Closing is not completed until all parties have completed all requirements as stated below, as well as all other obligations under this Agreement. Any amendment of the following dates MUST BE in writing and unless otherwise provided for in this Agreement, signed by both parties. The parties further acknowledge that Seller shall not receive the proceeds of sale until the Funding Date Requirements are satisfied. *FROM BK COURT APPROVAL*
   A. **SETTLEMENT/SIGNING DATE:** *ON OR BEFORE 21 DAYS* ✓ (as set forth in Para. 1) On or before the Settlement/Signing date the parties shall complete the following:
      i. Sign and deliver to the responsible closing officer all documents required to complete the transaction and to perform all other closing obligations of this Agreement; and
      ii. Provide for the delivery of all required funds, exclusive of lender funds, if any, using wired, certified or other "ready" funds acceptable to the closing officer.
   B. **FUNDING DATE (Completion of Closing):** *24 HOURS AFTER CLOSING*. On or before the Funding Date the responsible party(ies) shall make all funds available to the title officer for disbursement in accordance with this Agreement. The Funding Date Requirements have been satisfied when:
      i. the title officer has all funds available to disburse as required by this Agreement; and
      ii. the title officer has recorded with the County Clerk all required documents.
      Seller shall provide all existing keys, security system/alarm codes, gate openers and garage door openers to Buyer once Funding Date Requirements are satisfied or as otherwise provided for in an Occupancy Agreement. If the Buyer is obtaining a loan for the purchase of the Property, it is the Buyer's responsibility to ensure that Buyer's lender makes available to the closing officer, wired, certified or other "ready" funds with written instructions to disburse funds, on or before the Funding Date. The failure of Buyer's lender to make funds available on or before the Funding Date, shall be deemed a default of this Agreement by the Buyer.

NMAR Form 2104 (2019 JAN) Page 4 of 15        ©2008 New Mexico Association of REALTORS®        Buyer _____ Seller _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com        Frank

 

# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

**10. POSSESSION DATE.**
  A. Seller shall deliver possession of the Property to Buyer on the Possession Date as set forth below:
   ☒ At time Funding Date Requirements are satisfied
   ☐ Other: _____
  B. Unless otherwise agreed to in writing, upon Possession Date, or the date the Property is surrendered to Buyer per a Seller Occupancy Agreement, if applicable, Seller shall have all his personal belongings and all debris and garbage removed from the Property. In the event Seller fails to remove his personal property, Buyer shall not be responsible for storage of Seller's personal property, may dispose of Sellers personal property in any manner Buyer deems appropriate, in Buyer's sole discretion, and shall not be liable to Seller for the value of Seller's personal property. In the event Seller fails to remove all debris and garbage from the Property, Seller shall be liable to Buyer for all costs associated with removal of such debris and garbage.
  C. If Possession Date is other than the time the Funding Date Requirements are satisfied, then Buyer and Seller shall execute a separate written agreement outlining the terms agreed to by the parties. (See NMAR Form 2201- Occupancy Agreement – Buyer or NMAR Form 2202 – Occupancy Agreement - Seller)
  D. Seller shall maintain homeowners and liability insurance on Property through Possession Date, unless otherwise provided for in an Occupancy Agreement.

**11. COSTS TO BE PAID.** Buyer or Seller, as applicable, shall pay the following marked items: **DO NOT USE THIS SECTION FOR SELLER CONCESSIONS/CREDITS TO BUYER; USE AN ADDENDUM**

| LOAN RELATED COSTS AND FEES | Buyer | Seller | Not Required | TITLE COMPANY CLOSING COSTS | Buyer | Seller | Not Required |
|---|---|---|---|---|---|---|---|
| Appraisal Fee | x | | | Closing Fee | | x | |
| Appraisal Re-inspection Fee | | | x | Pro-Rata Data Search | | x | |
| Credit Report | x | | | Legal Document Preparation | | x | |
| Loan Assumption/Transfer | | | x | Special Assessment Search | | x | |
| Origination Charge: up to ☐ $ ☐ % | | | x | Buyer Recording Fees | x | | |
| Points – Buydown | | | x | Seller Recording Fees | | x | |
| Points – Discount | | | x | Other: | | | |
| Tax Service Fee | | x | | | | | |
| Flood Zone Certification | | x | | Other: | | | |
| Other: | | | x | | | | |
| | | | | **POLICY PREMIUMS** | | | |
| Other: | | | | Initial Title Commitment | | x | |
| | | | | Standard Owner's Policy | | x | |
| **PREPAIDS REQUIRED BY LENDER** | | | | Mortgagee's Policy | x | | |
| Flood Insurance | | | x | Mortgagee's Policy Endorsements | x | | |
| Hazard Insurance | x | | | Other: | | | |
| Interest | x | | | | | | |
| PMI or MIP | | | x | Any fees charged by the title company to revise the title commitment, shall be borne by the party who necessitated the revision. In the event a third-party document necessitates the revision (e.g. survey, appraisal, etc.), the parties agree to equally split any fee charged. | | | |
| Taxes | | x | | | | | |
| **MANUFACTURED HOME COSTS** | | | | **MISCELLANEOUS** | | | |
| Foundation Inspection | x | | | Survey (Para. 19) | | x | |
| Foundation Repairs | | | x | Impact Fees | | | x |
| Re-Inspection Fees | | | x | Transfer Fees (e.g. HOA) | | | x |
| DMV Title Transfer | | x | | Certificate Fee (e.g. HOA) | | | x |
| Deactivation Fees | | x | | Other: | | | |
| Other: | | | | Other: | | | |
| Other: | | | | Other: | | | |

**Buyer shall pay all other allowed direct loan costs.**

NMAR Form 2104 (2019 JAN) – Page 5 of 15        ©2008 New Mexico Association of REALTORS®        Buyer _____ Seller _____ Frank

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

 

12. ☐ **IRS 1031 TAX-DEFERRED EXCHANGE.** ☐ Buyer ☐ Seller intends to use this Property to accomplish a 1031 Tax-Deferred Exchange. The parties shall cooperate with one another in signing and completing any documents required. The non-exchanging party shall bear no additional expense.

13. **PRORATIONS.** Seller shall be responsible for disclosing all applicable property specific fees, or lease agreements, private memberships and/or association fees or dues, taxes and contract service agreements, all of which are to be prorated through Settlement/Signing Date. Any equipment rental or contract service agreement (e.g. alarm system, satellite system, propane tank (to include any remaining propane gas therein), private refuse collection, road maintenance, etc) shall be handled directly between the Buyer and Seller; the title or escrow company shall not be responsible for proration thereof.

14. **ASSESSMENTS.** For all bonds, impact fees and assessments other than PID assessments (collectively "assessments"), Buyer shall have _____ days after receipt of the title commitment to object in writing to the amounts of such assessments and to terminate this Agreement ("Objection Date"). In the event Buyer submits written objections by the Objection Date, the Earnest Money, if delivered, shall be refunded to the Buyer. If Buyer fails to notify Seller of Buyer's objections by the Objection Date, Buyer shall be deemed to have accepted the amounts of any assessment and shall have waived his right to terminate this Agreement based thereon. In the event Buyer does not object, Buyer shall assume all assessments that are part of or paid with the property tax bill. If other assessments are a lien upon the Property, the current installment shall be prorated through Settlement/Signing Date. Buyer shall assume future installments. Buyer shall pay all future assessments for improvements. **NOTE:** If Property is located in a Public Improvement District (PID), Seller must provide a Public Improvement District Disclosure to Buyer PRIOR to entering into this Agreement. See Para. 18(B).

15. **EXAMINATION OF TITLE; LIENS; DEED.**
   A. ☐ BUYER ☒ SELLER shall order a title commitment from **Fidelity National Title - Kathy Becker** (Title Company) within **3** days after the ☐ Date Of Acceptance ☐ Date TOM Fee is Delivered ☐ Date Earnest Money is Delivered. After receipt of the title commitment and all documents referred to therein, Buyer shall have **7** days ("Review Period") to review and object to title exceptions. Exceptions to the title, including the Standard Exceptions, shall be deemed approved unless Buyer delivers written objections to the Seller within the Review Period. If Seller is unwilling or unable to remove such exception(s) before the Settlement/Signing Date, Seller shall provide written notice to Buyer within **7** days after receipt of Buyer's objection and Buyer may choose to close subject to exceptions, remove the exceptions at Buyer's expense or terminate this Agreement. If Buyer terminates this Agreement, Earnest Money, if delivered, shall be refunded to Buyer.
   B. Seller shall satisfy any judgments and liens, including but not limited to, all mechanics' and materialmen's liens of record on or before Funding Date and shall indemnify and hold Buyer harmless from any liens filed of record after Settlement/Signing Date and which arise out of any claim related to the providing of materials or services to improve the Property as authorized by Seller or Seller's agents, unless otherwise agreed to in writing.
   C. Seller shall convey the Property by ☒ General Warranty Deed ☐ Special Warranty Deed ☐ Other Deed (describe) _____ subject only to any matters identified in the title commitment and not objected to by Buyer as provided in Para. 15A. The legal description contained in the deed shall be the same legal description contained in the title commitment and any survey required under Para. 19.

16. **FIRPTA.** The Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) requires buyers who purchase real property from foreign sellers to withhold a portion of the amount realized from the sale of the real property for remittance to the Internal Revenue Service (IRS). In the event the seller(s) is **NOT** a foreign person, FIRPTA requires the buyer to obtain proof of the seller's non-foreign status in order to avoid withholding requirements. Exceptions may apply. For more information, refer to NMAR Form 2304 – Information Sheet – FIRPTA & Taxation of Foreign Persons Receiving Rental Income from U.S. Property.

FIRPTA Exception (most common): The sales price of the property is not more than $300,000 **AND** buyer warrants that buyer shall be using the property as buyer's primary residence ("Exception").

*NOTE: BOTH MUST APPLY TO QUALIFY AS AN EXCEPTION.*
Exception ☐ does ☒ does not apply  _____ Buyer(s) Initials.

 

# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

In the event the above Exception to FIRPTA does not apply, then prior to or at closing, Seller(s) shall provide to Buyer or to a Qualified Substitute (generally, the Title Company) either a Non-Foreign Seller Affidavit(s) **OR** a letter from the IRS indicating Seller(s) is exempt from withholding. In the event Seller(s) fails to do so, Buyer shall have the right to withhold the applicable percentage of the amount realized from the sale of the Property for remittance to the IRS.

17. **INSURANCE CONTINGENCY/ APPLICATION.**
    A. **APPLICATION.** Buyer shall make application for insurance within __14__ days after Date of Acceptance of this Agreement. If the Buyer fails to make application to the insurance company within the agreed time, this insurance contingency shall be deemed waived.
    B. **CONTINGENCY.** Provided the Contingency Deadline as set forth below in Para. 17(C) is met, this Agreement is conditioned on the following:
       i) Buyer's ability to obtain a homeowner's or property insurance quote on the Property at normal and customary premium rates; AND,
       ii) Seller's claim history having no impact on the Buyer's insurance in the future.

       **Buyer understands that an insurance company may cancel or change the terms of a homeowner's insurance policy/quote for any reason prior to close of escrow or within sixty days after issuance of the homeowner's policy/quote (which generally occurs at close of escrow).**
    C. **CONTINGENCY DEADLINE.** The Insurance Contingency set forth in Para. 17(B) above shall be deemed satisfied, unless within ____17____ days after Date of Acceptance of this Agreement, Buyer delivers written notice to Seller that one or more of the above insurance contingencies cannot be satisfied along with documentation from the insurance provider stating the same. ("Contingency Deadline"). In the event Buyer delivers such notice and documentation to Seller by the Contingency Deadline, the Purchase Agreement shall terminate and the Earnest Money, if delivered, shall be refunded to Buyer.

18. **DISCLOSURES AND DOCUMENTS.**
    A. **LEAD BASED PAINT(LBP).** Is any part of this Property a residence built before 1978? ☐ Yes ☒ No If the answer is "Yes", attach NMAR Form 5112 LBP Addendum to Purchase Agreement. Property is subject to the LBP Renovation Repair and Painting Program. See NMAR Form 2315 – Information Sheet LBP Renovation Repair & Painting Program.
    B. **PUBLIC IMPROVEMENT DISTRICT ("PID").** Is this Property located in a PID? ☐ Yes ☒ No If the answer is "Yes", SELLER MAY NOT ACCEPT AN OFFER FROM BUYER UNTIL SPECIFIC DISCLOSURES REGARDING THE PID HAVE BEEN MADE TO THE BUYER.
       ____ ____ **Buyer(s) Initials.** Buyer(s) hereby acknowledge receipt of the PID Disclosure on the Property. See NMAR Form 4550 – Public Improvement District Disclosure Form and NMAR Form 4500 – Information Sheet Public Improvement District.
    C. **HOMEOWNERS' OR CONDOMINIUM (UNIT) OWNERS' ASSOCIATION ('HOA/COA").** Is the Property located in a (HOA) or (COA)? ☐ Yes ☒ No If the answer is Yes", Seller shall provide Buyer with specific documents pertaining to the Property and HOA and/or COA, as applicable. For HOAs, see NMAR Form 4600 – Information Sheet HOA, NMAR Form 4650 – Seller's Disclosure of HOA Documents and NMAR Form 4700 – HOA Request for Disclosure Certificate. For COAs, see NMAR Form 2302A – Re-Sale Certificate for COAs.
    D. **PROPERTY TAX DISCLOSURE.** See NMAR Form 3275 - Information Sheet Estimated Property Tax Levy Disclosure.
       ____ ____ **Buyer(s) Initials.** Buyer(s) hereby acknowledges receipt of the Estimated Property Tax Levy on the Property, attached as Exhibit _____ and understands that said Estimated Property Tax Levy is based on the LISTING price of the Property; OR
       __MM__ **Buyer(s) Initials.** Buyer(s) hereby acknowledges that the Estimated Property Tax Levy on the Property is not readily available and does hereby waive the right to receive the Estimated Property Tax Levy.
    E. **SEPTIC SYSTEM.** Does the Property include an on-site liquid waste system? ☐ Yes ☒ No If the answer is "Yes", the transfer of the Property is subject to regulations of the New Mexico Environment Department governing on-site liquid waste systems which includes the requirement that Seller have an inspection conducted by a licensed septic system inspector prior to transfer. Attach NMAR Form 5120A - Septic System Contingency Addendum. See NMAR Form 2308 – Information Sheet Septic Systems.




# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

F. **WELLS.** Does the Property include a well? ☐ Yes ☒ No  If the answer is "Yes", is the well ☐ Private Domestic Well ☐ Shared Domestic Well ☐ Other _____.
Transfer of Property with a well is subject to the regulations of the New Mexico Office of the State Engineer, which includes the requirement that the State Engineer's Office be notified when a well changes ownership. See NMAR Form 2307 – Information Sheet Water Rights & Wells.

G. **MANUFACTURED HOUSING.** Does the Property include a manufactured house? ☐ Yes ☐ No  If the answer is "Yes", attach NMAR Form 2700 – Seller's Disclosure of Manufactured Housing.

H. **DOCUMENTS.** As used in this Sub-Para. 18(H), the Delivery Deadline is the date by which Seller shall provide and Buyer must receive any documents, reports or surveys specified.

| DOCUMENTS | DELIVERY DEADLINE | OBJECTION DEADLINE | RESOLUTION DEADLINE |
|---|---|---|---|
| Property Disclosure Statement | AS IS | AS IS | AS IS |
| Road Documents | | | |
| Water Rights Documents | | | |
| Well Documents: See NMAR Form 2307 Information Sheet – Water Rights & Wells. (Including but not limited to: well permit, well log, shared well agreement and Change of Ownership Information notification.) | | | |
| Lease Agreements | | | |
| Permits | | | |
| Homeowner's Association (HOA) Documents | | | |
| Homeowner's Association (HOA) Disclosure Certificate OR Condominium Re-Sale Certificate Must be delivered to Buyer no less than seven (7) days before the Settlement/Signing Date. | | Date _____ Buyer has no less than seven (7) days from receipt of the HOA Disclosure Certificate to object | |
| CCR's – Restrictive covenants | | | |
| Solar Power System/Panels Documents – If Buyer will assume Solar Panel System Lease/Loan, use NMAR Form 5125 – DO NOT COMPLETE THIS SECTION | | | |
| Other: | | | |
| **MANUFACTURED HOUSING** | | | |
| Manufactured Housing Documents – See NMAR Form 2700 Seller's Disclosure of Manufactured Housing | | | |
| Structural Engineer Inspection | | | |
| FHA Inspection | | | |
| Foundation Installation | | | |
| Manufactured Housing Division Permanent Foundation Permit | | | |

19. **SURVEYS OR IMPROVEMENT LOCATION REPORT (ILR).** Buyer has the right to have performed the survey or ILR selected below or the right to accept an existing one. Unless otherwise agreed in writing, the party paying for the survey or ILR as indicated in Para. 11 shall select the surveyor and order the survey or ILR. **The party who agrees to pay for the survey or ILR is responsible for doing so, even if the transaction does not close.**
☒ Improvement Location Report ☐ Staked Boundary Survey ☐ American Land Title Association Survey (ALTA) ☐ Flood Plain Designation ☐ Other: _____

A. **DELIVERY DEADLINE:** Survey or ILR shall be delivered to Buyer(s) no later than: _____, _____ or __14__ days from Date of Acceptance.
B. **OBJECTION DEADLINE:** Objections to be delivered to Seller(s) no later than: _____, _____ or __7__ days from Date of Acceptance.
C. **RESOLUTION DEADLINE:** All objections to be resolved no later than: _____, _____ or __7__ days from Date of Acceptance.
D. **OBJECTION/RESOLUTION:** Para. 21(H) and (I) shall further govern Buyer's right to object to the Survey or ILR performed and resolution of Buyer's objections.



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019



**20. BUYER'S REPRESENTATIONS.** Buyer warrants that prior to entering into this Agreement, he has thoroughly investigated the neighborhood and the areas surrounding the property, to include, but not be limited to investigation of the following: the existence of registered sex offenders or other persons convicted of crimes that may reside in the area; and the presence of any structures located, businesses operating or activities conducted in the area that, in Buyer's opinion, affects the value and/or desirability of the property. By entering into this Agreement, Buyer represents he is satisfied with the neighborhood and surrounding areas.

**21. INSPECTIONS. THE PARTIES ARE ENCOURAGED TO EMPLOY COMPETENT AND, WHERE APPROPRIATE, LICENSED PROFESSIONALS TO PERFORM ALL AGREED UPON INSPECTIONS OF THE PROPERTY.**
  **A. BUYER DUTIES AND RIGHTS.**
   i. **BUYER'S DILIGENCE, ATTENTION AND OBSERVATION.** The Buyer has the following affirmative duties:
      a) To conduct all due diligence necessary to confirm all material facts relevant to Buyer's purchase of the Property;
      b) To assure himself that the Property Buyer is purchasing is exactly what Buyer is intending to purchase;
      c) To make himself aware of the physical condition of the Property through his own diligent attention and observation;
      d) To investigate the legal, practical and technical implications of all disclosed, known or discovered facts regarding the Property and;
      e) To thoroughly review all written reports provided by professionals and discuss the results of such reports and inspections with the professionals who created the report and/or conducted the inspection.
   ii. **RIGHT TO CONDUCT INSPECTIONS.** The Buyer is advised to exercise all his rights under and in accordance with this Agreement to investigate the Property. Unless otherwise waived, Buyer(s) may complete any and all inspections of the Property that he deems necessary. These inspections may include, but are not limited to the following: home, electrical, heating/air conditioning, plumbing, roof, structural, lead-based paint (including risk assessment, paint inspection or both), well equipment (pumps, pressure tanks, lines), well potability tests, well water yield tests, pool/spa/hot tub equipment, wood destroying insects, dry rot, radon, mold, square foot measurement, sewer line inspections, septic inspections, ductwork, phase one environmental and soil tests. The Buyer's rights to object to inspections and terminate the Agreement based on inspections are set forth in Para. 21(H). Buyer is advised to thoroughly review those rights.
   iii. **SQUARE FOOTAGE. BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES, BOTH THE REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON, IS APPROXIMATE. IF SQUARE FOOTAGE IS A MATERIAL MATTER TO THE BUYER, THE BUYER SHALL INVESTIGATE THE SQUARE FOOTAGE DURING THE INSPECTION PERIOD.**
      _____ **Buyer Initials.**
  **B. SELLER'S DUTY TO DISCLOSE.** Seller is required to disclose to Buyer any adverse material defects known to him about the Property. However, Seller does not have an obligation to inspect the Property for the Buyer's benefit or to repair, correct or otherwise cure known defects that are disclosed to Buyer or previously unknown defects that are discovered by Buyer or Buyer's inspectors. Seller shall make the Property available to Buyer for inspections.
  **C. AVAILABILITY OF UTILITIES FOR INSPECTIONS.**
      ☒ Buyer ☐ Seller shall be responsible for paying any charges required by the utility companies to have utilities turned on for inspection purposes. In no event shall Buyer be responsible for bringing the Property up to code or for paying unpaid utility bills. **If utilities are on as of Date of Acceptance, Seller shall maintain utilities through Possession Date (Para. 10) or date otherwise stated in an Occupancy Agreement.**
  **D. INSPECTOR SELECTION. NOTWITHSTANDING PARA. 19, UNLESS OTHERWISE AGREED TO IN WRITING, BUYER SHALL HAVE THE RIGHT TO SELECT ALL INSPECTORS AND ORDER ALL INSPECTIONS EVEN IF SELLER HAS AGREED TO PAY FOR THE INSPECTION(S).**

DocuSign Envelope ID: 989CA8D6-FF69-4834-A41E-F75D8B6426DA




# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

E. **PAYMENT OF INSPECTIONS. BUYER SHALL PAY FOR ALL INSPECTIONS EXCEPT THE FOLLOWING, WHICH SHALL BE PAID BY SELLER.** <u>PURCHASER WILL BE RESPONSIBLE FOR HOME INECTION AND TERMITE/DRY ROT INSPECTION.</u>

**NOTE: THE PARTY WHO AGREES TO PAY FOR THE INSPECTION IS RESPONSIBLE FOR DOING SO, EVEN IF THE TRANSACTION DOES NOT CLOSE.**

F. **INSPECTION DEADLINES. Unless otherwise provided for in this Agreement, the following applies:**
   i. **Delivery Deadline:** Inspections to be completed and reports delivered to Buyer(s) no later than: _____, _____ or __14__ days from Date of Acceptance.
   ii. **Objection Deadline:** Objections to be delivered to Seller(s) no later than: _____, _____ or __7__ days from Date of Acceptance.
   iii. **Resolution Deadline:** Written agreement for resolution of all objections to be agreed upon no later than: _____, _____ or __7__ days from Date of Acceptance.

G. **WAIVER OF INSPECTIONS. Buyer to initial if applicable.**
   _____  _____  Buyer waives ALL inspections unless required by law or Buyer's lender.
   _____  _____  Buyer waives ALL inspections.
   _____  _____  Buyer waives the following inspections: _____

H. **BUYER'S OBJECTIONS/TERMINATION.**
   i. If Buyer has reasonable objections to any issue or condition disclosed by any document (Para. 18), survey or ILR (Para. 19) and/or inspection (Para. 21), **then no later than the applicable Objection Deadline**, Buyer may OBJECT and request that Seller cure the issue/condition (NMAR Form 5109 – ORW Agreement) or Buyer may TERMINATE this Agreement (NMAR Form 5105 – Termination Agreement). Buyer's objections or termination must be in writing. If Buyer **OBJECTS AND ASKS SELLER TO CURE**, Buyer MUST produce with his objections a copy of the document, survey and/or SECTION of the inspection report on which Buyer's objections are based; production of such document, survey or report is **NOT** required if Buyer **TERMINATES WITHOUT ASKING SELLER TO CURE OBJECTIONS.** If Buyer timely elects to terminate, Earnest Money, if delivered, shall be refunded to Buyer. Buyer's failure to timely deliver to Seller his objection or termination shall be deemed a waiver of Buyer's right to object or terminate and of the applicable contingency.
   ii. If Seller is responsible for ordering a report or document, and Buyer does not receive that report or document by the Delivery Deadline, Buyer and Seller may agree to extend the applicable deadlines or Buyer may terminate the Agreement. If Buyer elects to terminate, Earnest Money, if delivered, shall be refunded to Buyer.
   iii. If Buyer is responsible for ordering a report or document, and fails to do so in a timely manner, so that Buyer does not have the report or document by the Objection Deadline, Buyer may not use the failure to receive the report or document as the rationale for terminating the Agreement.

I. **RESOLUTION.** If Buyer requests a cure of his objections, Seller may agree to cure Buyer's objections as requested, provide an alternative cure, or refuse to correct/address Buyer's objections (Collectively Seller's Response). Buyer may not withdraw his objections and terminate the Agreement prior to Seller's Response. If in Seller's Response, Seller does not agree to cure all Buyer's objections in the manner requested by Buyer, then Buyer may terminate the Agreement or continue to negotiate with Seller. If negotiations continue, and Buyer and Seller are unable to reach a Resolution by the Resolution Deadline then **THIS AGREEMENT SHALL TERMINATE** and Earnest Money, if delivered, shall be refunded to Buyer.

J. **OBJECTIONS COMPLETION.** In the event Seller agrees to complete or pay for any repairs prior to closing, Seller shall complete the repairs no later than __3__ days prior to Settlement/Signing Date.

K. **BUYER'S ENTRY.** Seller shall provide reasonable access to Buyer and Buyer's inspectors. Buyer shall return the Property to the condition it was in prior to any entry, test and/or inspection by Buyer. Buyer shall be liable to Seller for any damages that occur to the Property as a result of any inspection conducted by Buyer, his Broker(s), agents, inspectors, contractors and/or employees (collectively "Buyer's Representatives") and Buyer agrees to hold Seller harmless, indemnify and defend Seller from any and all claims, liabilities, liens, losses, expenses (including reasonable attorneys' fees and costs), and/or damages arising out of or related to any entry, inspections and/or tests conducted by Buyer or Buyer's Representatives. Buyer and Buyer's Representatives are NOT permitted on the Property without prior notification to and approval by Seller or Seller's Broker.

22. **TERMINATION AND DISTRIBUTION OF EARNEST MONEY.** If this Agreement terminates in accordance with the terms of this Agreement, the parties shall execute a Termination Agreement (NMAR Form

Case 19-10526-j7 Doc 31 Filed 06/22/19 Entered 06/22/19 09:32:36 Page 15 of 20


# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019


5105) and in the event Earnest Money has been delivered to a Title Company/Escrow Agent, the parties shall execute an Earnest Money Distribution Form that provides for distribution of the Earnest Money in accordance with the terms of this Agreement.
_____ Buyer(s) Initials. _____ Seller(s) Initials.

23. **SERVICE PROVIDER RECOMMENDATIONS.** If Broker(s) recommends a builder, contractor, escrow company, title company, pest control service, appraiser, lender, home inspection company or home warranty company or any other person or entity to Seller or Buyer for any purpose, such recommendation shall be independently investigated and evaluated by Seller or Buyer, who hereby acknowledges that any decision to enter into any contractual arrangement with any such person or entity recommended by Broker shall be based solely upon such independent investigation and evaluation.

24. **HOME WARRANTY CONTRACT.** Buyer is advised to investigate the various home warranty plans available for purchase. The parties acknowledge that different home warranty plans have different coverage options, exclusions, limitations and service fees and most plans exclude pre-existing conditions. Neither the Seller, nor the Broker, is responsible for home warranty coverage or lack thereof. The parties acknowledge that a Home Warranty Service Contract provider may conduct an inspection of the Property, but does not always do so.
☐ A Home Warranty Plan shall be ordered by ☐ Buyer ☐ Seller to be issued by _____
_____ at a cost not to exceed $ _____ , to be paid for by ☐ Buyer ☐ Seller.
☒ Buyer declines the purchase of a Home Warranty Plan.

25. **DISCLAIMER.** The Property is sold in its current condition including, but not limited to, the nature, location, amount, sufficiency or suitability of the following: current or future value; future income to be derived therefrom; current or future production; condition; size; location of utility lines; location of sewer and water lines; availability of utility services or the possibility of extending improvements (paving, sewer, water, utilities, access) to the Property; easements with which the Property is burdened or benefited; lot boundaries; adjacent property zoning; physical and legal access; soil conditions; permits, zoning, or code compliance; lot size or acreage; improvements or square footage of improvements; and water rights. **Broker has not investigated and is not responsible for the forgoing aspects of the Property, among which lot size, acreage, and square footage may have been approximated, but are not warranted as accurate.** Buyer shall have had full and fair opportunity to inspect and judge all aspects of the Property with professional assistance of Buyer's choosing prior to settlement Buyer and Seller acknowledge that Brokers' only role in this transaction is to provide real estate advice to Broker's respective client and/or customer and real estate information to the parties. For all other advice or information that may affect this transaction, including but not limited to financial and legal advice, the parties shall rely on other professionals.
_____ Buyer(s) Initials. _____ Seller(s) Initials.

26. **MAINTENANCE.** Until the Possession Date, Seller shall maintain the Property and all aspects thereof including, but not limited to the following: heating; air conditioning; electrical; roofs; solar; septic systems; well and well equipment; gutters and downspouts; sprinklers; plumbing systems, including the water heater; pool and spa systems; appliances; and other mechanical apparatuses. **If utilities are on as of Date of Acceptance, Seller shall maintain utilities through Possession Date (Para. 10) or date otherwise stated in an Occupancy Agreement. It is the Buyer's responsibility to arrange to transfer utilities into Buyer's name on Possession Date or date otherwise stated in an Occupancy Agreement.** Seller shall deliver the Property, all of the foregoing, and all other aspects thereof to Buyer in the same condition as of the Date of Acceptance, reasonable wear and tear excepted. The following items are specifically excluded from the above:
_____
_____
_____

27. **PRE-CLOSING WALK-THROUGH.** Within __2__ days prior to Settlement/Signing Date, Seller shall allow reasonable access to conduct a walk-through of the Property for the purpose of satisfying Buyer that any corrections or repairs agreed to by the Seller have been completed, warranted items are in working condition and the Property is in the same condition as on the Date of Acceptance, reasonable wear and tear excepted. See NMAR Form 5110 – Walk-Through Statement.




28. **CONSENT TO THE ELECTRONIC TRANSMISSION OF DOCUMENTS AND TO THE USE OF ELECTRONIC SIGNATURES.** The parties [X] do [ ] do not consent to conduct any business related to and/or required under this Agreement by electronic means, including, but not limited to the receipt of electronic records and the use of electronic signatures. Subject to applicable law, electronic signatures shall have the same legal validity and effect as original hand-written signatures. Nothing herein prohibits the parties from conducting business by non-electronic means. If a party has consented to receive records electronically and/or to the use of electronic signatures, that party may withdraw consent at any point in the transaction by delivering written notice to the other party.

29. **ASSIGNMENT.** Buyer [ ] may [X] may not sell, assign or transfer the Buyer's rights or obligations under this Agreement, or any interest herein.

30. **HEIRS AND ASSIGNS.** This Agreement shall apply to, be binding upon and enforceable against and inure to the benefit of the parties hereto and their respective representatives, successors, permitted assigns, heirs and estates.

31. **DEFINITIONS.** The following terms as used herein shall have the following meanings:
    A. **APPRAISAL** means a current estimated market value of the Property as established by a licensed real estate appraiser. In the event the Buyer is obtaining a loan, the term refers to an appraisal conducted by a real estate appraiser approved by the lender.
    B. **BROKER** includes Buyer's and Seller's brokers.
    C. If a specific **DATE** is stated as a deadline in this Agreement, then that date **IS** the **FINAL** day for performance; and if that date falls on a Saturday, Sunday or a legal Holiday, the date **does not** extend to the next business day.
    D. **DATE OF ACCEPTANCE** is the date this Agreement is fully executed and delivered.
    E. **DAY(S)** shall be determined on a "calendar day" basis and if the **FINAL** day for performance falls on a Saturday, Sunday or legal Holiday, the time therefore will be extended to the next business day. Legal Holidays are described as New Year's Day, Martin Luther King Jr.'s Birthday, President's Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day, and Christmas.
    F. **DELIVERED** means personally delivered or by any method where there is evidence of receipt. In the event the parties have agreed to electronic transmission of documents, a facsimile or e-mail transmission of a copy of this or any related document shall constitute delivery of that document. When an item is delivered to the real estate Broker who is working with or who represents the Buyer or Seller, it is considered delivered to the Buyer or Seller respectively, except if the same Broker works for or represents both Buyer and Seller, in which case, the item must be delivered to the Buyer or Seller, as applicable. **EXCEPTION: For the purposes of the TOM Fee, delivery of the TOM Fee to the Listing Broker constitutes delivery to the Seller, *EVEN if the same Broker is working with both Buyer and Seller.***
    G. **DEADLINES.** Any "deadline(s)" can be expressed either as a calendar date (See Para. 31(C)) or as a number of days (See Para. 31(E)).
    H. **ELECTRONIC** means relating to technology having electrical, digital, magnetic, wireless, telephonic, optical, electromagnetic or similar capabilities and includes, but is not limited to, facsimile and e-mail.
    I. **ELECTRONIC RECORD** means a record created, generated, sent, communicated, received or stored by electronic means.
    J. **ELECTRONIC SIGNATURE** means an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.
    K. **FIXTURE** means an <u>article</u> which was once personal property, but which has now become a part of the Property because the article has been fastened or affixed to the Property.
    L. **MASCULINE** includes the feminine.
    M. **PERSONAL PROPERTY** means a moveable article that is NOT affixed or attached to the Property.
    N. **RESOLUTION** means the Buyer and Seller have a written agreement regarding how all Buyers' objections shall be resolved.
    O. **SINGULAR** includes the plural.
    P. **STANDARD EXCEPTIONS** means those common risks as set forth in the title commitment for which the title insurance policy does NOT provide coverage. These printed exceptions are matters outside the Title Company's search of the public records, and therefore special requirements must be met in order to delete them and provide the insured with the additional/extended coverage.

DocuSign Envelope ID: 989CA8D6-FF69-4834-A41E-F75D8B6426DA




# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

32. **RISK OF LOSS.** Prior to Funding Date, Seller shall bear the risk of fire or other casualty, and in the event of loss, Buyer shall have the option (to be exercised by written notice to Seller within **5 days** after receipt of notice of loss) of terminating this Agreement and receiving a refund of the Earnest Money, if delivered, or closing and receiving assignment of Seller's portion of the insurance proceeds, if any, at Funding Date. If Buyer fails to timely notify Seller of Buyer's election, Buyer shall be deemed to have elected to proceed to Closing.

33. **FLOOD HAZARD ZONE.** If the Property is located in an area, which is designated as a special flood hazard area, Buyer may be required to purchase flood insurance in order to obtain a loan secured by the Property from any federally regulated financial institution or a loan insured or guaranteed by an agency of the U.S. Government.

34. **MEDIATION.** If a dispute arises between the parties relating to this Agreement, the parties shall submit the dispute to mediation, jointly appoint a mediator and share equally the costs of the mediation. If a mediator cannot be agreed upon or mediation is unsuccessful, the parties may enforce their rights and obligations under this Agreement in any manner provided by New Mexico law. For more information, see NMAR Form 5118 - Information Sheet - Mediation Information for Clients and Customers.

35. **EARNEST MONEY DISPUTE.** Generally, title or escrow companies will not release Earnest Money without first receiving an Earnest Money Distribution Agreement signed by all parties to this Agreement (NMAR Form 5105B). If the parties cannot come to an agreement on the how Earnest Money shall be distributed, Para. 34 shall apply. If the parties cannot reach a resolution through mediation and proceed to litigation, at the conclusion of the litigation the court shall issue a judgment setting forth how Earnest Money shall be apportioned. Either party may present this judgment to the title or escrow company for distribution of the Earnest Money in accordance with the judgment. Parties to all Earnest Money disputes are urged to review NMAR Form 2310 – Earnest Money Dispute Information Sheet, and to consult an attorney to fully understand all their rights and remedies.

36. **DEFAULT.** Any default under this Agreement shall be treated as a material default, regardless of whether the party's action or inaction is specifically classified as a default herein. Additionally, time is of the essence and failure of a party to timely make payment, perform or satisfy any other condition of this Agreement in accordance with this Agreement shall be considered a material default. Generally, a material default relieves the non-defaulting party from further performance under this Agreement; however, the non-defaulting party may elect *not* to terminate this Agreement. If the non-defaulting party elects to terminate this Agreement, he may also elect to retain the Earnest Money, if delivered, and pursue any additional remedies allowable by law, including specific performance. In the event, however, the non-defaulting party elects to treat this Agreement as being in full force and effect, the non-defaulting party remains responsible for all obligations and retains all rights and remedies available under this Agreement.

37. **ATTORNEY FEES AND COSTS.** Should any aspect of this Agreement result in arbitration or litigation, the prevailing party of such action shall be entitled to an award of reasonable attorneys' fees and court costs.

38. **FAIR HOUSING.** Buyer and Seller understand that the Fair Housing Act and the New Mexico Human Rights Act prohibit discrimination in the sale or financing of housing on the basis of race, age (this covers protection for people with children under age 18 and pregnant women), color, religion, sex, sexual orientation, gender identity, familial status, spousal affiliation, physical or mental handicap, national origin or ancestry.

39. **COUNTERPARTS.** This agreement may be executed in one or more counterparts, each of which is deemed to be an original, and all of which shall together constitute one and the same instrument.

40. **GOVERNING LAW AND VENUE.** This Agreement is to be construed in accordance with and governed by the internal laws of the State of New Mexico without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the State of New Mexico to the rights and duties of the parties. Each party hereby irrevocably consents to the jurisdiction and venue of the state and federal courts located in the county in which the Property or any portion of the Property is located in connection with any claim, action, suit, or proceeding relating to this Agreement and agrees that all suits or proceedings relating to this Agreement shall be brought only in such courts.

41. **SEVERABILITY.** If any portion of this Agreement is found by any court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall remain in full force and effect.

42. **MULTIPLE BUYERS.** Each Buyer to this Agreement is jointly and severally liable for all obligations under this Agreement. In the event any buyer should be unable to perform under this Agreement (due to death or incapacity) the remaining Buyer(s) shall continue to be obligated under this Agreement.



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019



**43. AUTHORITY OF SIGNORS.** If Buyer or Seller is a corporation, partnership, estate, trust, limited liability company or other entity, the person signing this Agreement on its behalf warrants his authority to do so and to bind the Buyer or Seller for which he is signing.

**44. BUYER AND SELLER AUTHORIZATIONS.** Unless otherwise instructed in writing, with respect to the real estate transaction that is the subject of this Agreement, Seller and Buyer hereby authorize the following: the Title Company, Lender, Escrow Agent and their representatives to provide a copy of any and all loan estimates, closing disclosures, other settlement statements and title documents to the Seller's and Buyer's respective Brokers; the Title Company to deliver any Title Company generated settlement statement(s), in its entirety (Seller and Buyer's information) to both the Seller and Buyer and their respective Brokers; and his respective Broker to be present for the Closing.

**45. SURVIVAL OF OBLIGATION.** The following Paragraphs will survive Closing of the Property: 5(D) and (E), 10-14, 20, 21, 23-27, 30, 34-37, 39-41 and 44.

**46. FORCE MAJEURE.** Neither party shall be liable for delay or failure to perform any obligation under this Agreement if the delay or failure is caused by any circumstance beyond their reasonable control, including but not limited to, acts of God, war, civil unrest or industrial action.

**47. ENTIRE AGREEMENT AND AMENDMENTS IN WRITING.** The parties understand that this offer, if accepted in writing by Seller and delivered to Buyer, constitutes a legally binding contract. This Agreement, together with the following addenda and any exhibits referred to in this Agreement, contains the entire Agreement of the parties and supersedes all prior agreements or representations with respect to the Property, which are not expressly set forth herein. **THIS AGREEMENT MAY BE MODIFIED ONLY BY *WRITTEN AGREEMENT* OF THE PARTIES.**

[X] Addendum No. __1__ (NMAR Form 5101 or 2300)
[ ] Buyer's Sale Contingency Addendum (NMAR Form 2503)
[ ] Buyer's Closing & Funding Sale Contingency (NMAR Form 2503A)
[X] Estimated Property Tax Levy Exhibit _____
[ ] Lead-Based Paint Addendum (NMAR Form 5112)
[ ] Public Improvement District Disclosure (NMAR Form 4550)
[X] Other __SUPPLEMENTAL BROKER DUTIES__

[ ] Occupancy Agreement – Buyer/Seller (NMAR Form 2201/2202)
[ ] Real Estate Contract Addendum (NMAR Form 2402)
[ ] Residential Resale Condominium Addendum (NMAR Form 2302)
[ ] Septic System Contingency Addendum (NMAR Form 5120A)
[ ] Seller's Financing, Mortgage or Deed of Trust Addendum (NMAR Form 2507)
[X] Other _____

**48. EXPIRATION OF OFFER.** This offer shall expire unless acceptance is delivered in writing to Buyer or Buyer's Broker on or before __June 12, 2019__, at __12:00__ [ ] a.m. [X] p.m. Mountain Time. NOTE: UNTIL SELLER ACCEPTS THIS OFFER AND DELIVERS THE AGREEMENT, BUYER MAY WITHDRAW THIS OFFER AT ANY TIME.

## OFFER BY BUYER

**WIRE FRAUD ALERT.** Criminals are hacking email accounts of real estate agents, title companies, settlement attorneys and others, resulting in fraudulent wire instructions being used to divert funds to the account of the criminal. The emails look legitimate, but they are not. Buyer and Seller are advised not to wire any funds without personally speaking with the intended recipient of the wire to confirm the routing number and the account number. Buyer and Seller should not send personal information such as social security numbers, bank account numbers and credit card numbers except through secured email or personal delivery to the intended recipient. Buyer _____

Buyer acknowledges that Buyer has read the entire Purchase Agreement and understands the provisions thereof.

| Buyer Signature | If Entity, Title of Signatory | Offer Date 06/10/2019 | Time |
|---|---|---|---|
| Buyer Signature | If Entity, Title of Signatory | Offer Date 06/10/2019 | Time |

Buyer Name (Print): **Melissa Jones**

| Buyer Name (Print) | If Entity, Name of Signatory | Email Address |
|---|---|---|
| Buyer Name (Print) | If Entity, Name of Signatory | Email Address |

| Buyer Address | | City | State | Zip Code |
|---|---|---|---|---|
| Buyer Home Phone | Buyer Cell Phone | Buyer Business Phone | | Buyer Fax |

NMAR Form 2104 (2019 JAN) Page 14 of 15   ©2008 New Mexico Association of REALTORS®   Seller / Frank

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

 

# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

Seller acknowledges that Seller has read the entire Purchase Agreement and understands the provisions thereof.
Seller *(select one)*:

☑ **SELLER ACCEPTS** this Offer and agrees to sell the Property for the price and on the terms and conditions specified in this Agreement.

**SELLER**

Seller Signature: _[signed]_     Date: 6/17/19    Time: 11:32am

Seller Signature | If Entity, Title of Signatory | Date | Time

Seller Name (Print): Philip Montoya, Trustee

Seller Name (Print): _____

Seller Address / City / State / Zip Code

Seller Home Phone / Seller Cell Phone / Seller Business Phone / Seller Fax

☐ **REJECTS & SUBMITS** a Counteroffer (NMAR Form 5102).

☐ **REJECTS & SUBMITS** an Invitation to Offer (NMAR Form 5103).

IF SELLER IS REJECTING THIS OFFER AND SUBMITTING EITHER A COUNTER OFFER, OR AN INVITATION TO OFFER, SELLER SHOULD NOT SIGN THIS AGREEMENT, BUT SHOULD INITIAL ALL PAGES.

INITIALS: SELLER _____ _____

☐ **REJECTS** this offer.

IF SELLER IS REJECTING THIS OFFER, SELLER SHOULD NOT SIGN THIS AGREEMENT AND DOES NOT NEED TO INITIAL ANY/ALL PAGES, BUT SHOULD INITIAL BELOW.

INITIAL HERE: SELLER _____ _____